UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: } | | |
| BOYD RODNEY FLOYD } | CASE NO. 17-81075-CRJ-13 | |
| SSN: XXX-XX-4855 } | | |
| } | CHAPTER 13 | |
| Debtor(s). } | | |
| | | |
| BOYD RODNEY FLOYD } | AP NO. 17-80043-CRJ-13 | |
| } | | |
| Plaintiff(s), } | | |
| v. } | | |
| } | | |
| KELLY LARAN FLOYD n/k/a } | | |
| KELLY LARAN SHELTON } | | |
| } | | |
| Defendant(s). } | | |

**MEMORANDUM OPINION**

This Adversary Proceeding is before the Court on Defendant's Motion for Summary Judgment, Debtor's Motion for Summary Judgment, and Defendant's Response to Motion for Summary Judgment of Boyd Rodney Floyd. The Court, having considered the pleadings, the Affidavits of Kelly Laran Shelton (hereinafter the "Defendant") and Boyd Rodney Floyd (hereinafter the "Debtor"), and the applicable statutory and case law, finds that there are no genuine issues of material fact and that the Debtor is entitled to summary judgment as a matter of law.

I. **Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, as made applicable to adversary proceedings pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[1]

The moving party bears the initial burden of showing that there are no genuine issues of material fact to be decided at trial.[2] When the moving party has satisfied its burden, the non-moving party cannot rest upon the pleadings. Instead, the non-moving party must go beyond the pleadings and demonstrate by affidavit or other appropriate means that there is a genuine issue of material fact for trial.[3] In determining whether there is a genuine issue of material fact, the evidence and all factual inferences must be viewed by the Court in the light most favorable to the party opposing summary judgment and all reasonable doubts about the facts must be resolved in favor of the non-moving party.[4] When ruling on Cross-Motions for Summary Judgment, the Court must employ the same standard of review, reviewing each Motion independently on its own merits and "drawing all inferences in favor of the nonmoving party."[5]

---

[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Hyman v. Nationwide Mut. Fire Ins. Co.,* 304 F.3d 1179 (11th Cir. 2002).

[2] *Celotex Corp. v. Catrett*, 477 U.S. at 323.

[3] *Id.* at 324.

[4] *Acevedo v. First Union Nat. Bank*, 476 F.3d 861, 865 (11th Cir. 2007); *Andreini & Co. v. Pony Express Delivery Servs., Inc. (In re Pony Express Delivery Servs., Inc.),* 440 F.3d 1296, 1300 (11th Cir. 2006)("The court must view the facts and make all reasonable inferences in favor of the nonmoving party."); *Loren v. Sasser*, 309 F.3d 1296, 1301-02 (11th Cir. 2002); *Hyman*, 304 F.3d at 1179 (*citing Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999)).

[5] *Noreen Wiscovitch-Rentas v. Villa Blanca VB Plaza, LLC (In re PMC Marketing Corp.),* 543 B.R. 345 (B.A.P. 1st Cir. 2016); *See also Avocent Huntsville Corp. v. ClearCube Tech., Inc.,* 443 F.Supp.2d 1284, 1293 (N.D. Ala. 2006)("[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard").

II. **FINDINGS OF FACT**[6]

1. The Debtor and the Defendant were married on November 7, 1992 and had two children during their marriage. The parties were divorced on June 22, 2012 in the Circuit Court of Madison County, Alabama, in an action styled Kelly Laran Floyd v. Boyd Floyd, Case No. DR2011-570-KKH. On June 1, 2012, the parties entered into a Separation Agreement which provided for the division of property, debt resolution, and the custody of the parties' minor children.

2. Pursuant to the Separation Agreement incorporated by reference into the parties' Final Judgment of Divorce (hereinafter collectively "Divorce Decree"), the Defendant agreed to convey to the Debtor real property located at 946 Upper Hurricane Road, New Market, Alabama and the marital double-wide mobile home located on the property.

3. The Debtor agreed "to deed a 1/3 interest in the property which was formerly his grandmother's property, to the parties two minor children and retain a 1/3 interest for himself" with the restriction that the property cannot be sold or otherwise encumbered without the Debtor's express written permission.[7] He also agreed to be responsible for the balance of the mortgage indebtedness secured by the manufactured home owed "to Green Tree Acceptance, further covenanting and agreeing to hold the Wife harmless from all liability."[8]

---

[6] To the extent that any of the Court's findings of fact constitute conclusions of law, they are adopted as such. Alternatively, to the extent that any of the Court's conclusions of law constitute findings of fact, they are adopted as such.

[7] Defendant's Motion for Summary Judgment, ECF No. 11, Ex. A at 4.

[8] *Id.*

3

4. With respect to child support, the Divorce Decree provides as follows:

> The parties shall have joint legal custody of the minor children, however, the Husband shall be awarded primary physical custody of the minor children and the Wife shall have visitation . . . . The Wife will not be required to pay child support because the parties have agreed to a fair property settlement, the Wife has moved out of the marital residence and needs time to establish financial footing, and the oldest child of the parties is almost 19 years of age. Further, application of the guidelines would be manifestly unjust. The parties agree that the Wife will be able to claim [the oldest child] as a dependent for purposes of the Federal and State Income Tax deductions.[9]

Thus, the Divorce Decree required neither party to pay child support.

5. The Defendant agreed to be responsible for the joint indebtedness to Franklin Financial and to hold the Debtor harmless from all liability concerning the debt. However, the Debtor agreed to pay $350 directly to Franklin Financial for six months to help the Defendant pay the joint indebtedness.

6. In general, the parties otherwise agreed to be responsible for all debts in their individual names and each relinquished to the other any rights that they had in and to any retirement plans or benefits acquired through employment. Neither party was required to pay the other alimony nor child support.

7. On April 5, 2017, the Defendant filed a contempt proceeding against the Debtor in the Circuit Court of Madison County, Alabama, based on the Debtor's failure to make the mortgage payments to Green Tree Acceptance, and to hold the Defendant harmless for the debt, as required by the Divorce Decree.[10]

---

[9] *Id.*

[10] Defendant's Motion for Summary Judgment, ECF No. 11, Ex. B.

8. On April 6, 2017, the Debtor filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code in the Northern District of Alabama, Northern Division. The Debtor proposed in his Chapter 13 Plan to pay the mortgage indebtedness, now owed to Ditech Financial LLC ("Ditech"), through his Chapter 13 case as a secured debt in the amount of $12,783.73 with interest at 5.25%. The Debtor further proposed to treat the balance of the mortgage indebtedness as unsecured in the amount of $28,917.93 to be paid pro rata with all other unsecured claims.

9. On May 5, 2017, the Debtor filed a Complaint to Determine the Dischargeability of a Property Settlement Debt Owed to Kelly Laran Floyd n/k/a Kelly Laran Shelton, seeking a determination that his obligation under the Divorce Decree to pay the debt on the manufactured home is dischargeable pursuant to 11 U.S.C. § 523(a)(15).

10. On May 15, 2017, Ditech filed an Objection to the Chapter 13 Plan on the grounds that the proposed Plan provided for the cure of only a portion of the prepetition mortgage arrearage, that the proposed Plan failed to pay the secured portion of the claim the proper interest rate, and that Ditech was not adequately protected by the Plan as proposed.[11]

11. On June 15, 2017, the Debtor filed a Motion to Value Security and to Treat Remaining Amounts Referenced in Proof of Claim as Unsecured Debt ("Motion to Value"), seeking to value the manufactured home at $12,783.73 to be paid interest at 5.25% for purposes of confirming his Chapter 13 Plan.[12] On June 30, 2017, Ditech filed an Objection to the

---

[11] ECF No. 18.

[12] ECF No. 34.

Motion to Value and an Amended Objection to Confirmation arguing that the payoff on the manufactured home was $39,503.75 as of June 29, 2017.[13]

12. On July 5, 2017, Ditech filed a Proof of Claim in the amount of $38,577.23, with $38,021.56 treated as secured by the 2000 28 x 60 Fleetwood Manufactured home with interest at 11.5%.

13. Prior to the scheduled hearing on the Motion to Value, the parties reached an agreement, subject to future modification upon the conclusion of this Adversary Proceeding, agreeing that Ditech has a secured claim in the amount of $14,000 to be paid interest at 5.25%, with the balance of the claim to be treated as unsecured. The agreed Order on Motion to Value further provides that "[b]ecause there is a non-filing co-Debtor on the Ditech loan, Kelly Floyd, Ditech is not required to release its lien upon entry of a Discharge Order in this case. The lien shall remain effective as to the interest of Kelly Floyd."[14]

14. According to the Defendant's Affidavit she currently has "monthly expenses of approximately $1,904.17, some of which are supplemented by her current husband's income, and her current take home pay is $612.33 bi-weekly.[15] She further asserts that during the parties' marriage, the Debtor made in excess of $10,000 per year from his taxidermy business.

---

[13] ECF No. 41 and ECF No. 42.

[14] ECF No. 52.

[15] Response to Motion for Summary Judgment of Boyd Rodney Floyd, ECF No. 13, Affidavit of Kelly Laran Shelton at 1.

Case 17-80043-CRJ    Doc 14    Filed 09/27/17    Entered 09/27/17 11:39:42    Desc Main
Document    Page 6 of 15

15. According to the Debtor's Affidavit, his current income is $960 per month from Social Security Disability, from which $107 is deducted for Medicare, leaving him with $853 per month.[16] Additionally, the Plaintiff has earned an additional $150 per month from his taxidermy business from the petition date of April 6, 2017 through August 9, 2017.[17]

### III. CONCLUSIONS OF LAW

The Debtor argues that his obligation to pay the mortgage indebtedness to Green Tree Acceptance, now Ditech, under the terms of the parties' Divorce Decree constitutes a property settlement which is dischargeable under Chapter 13 of the Bankruptcy Code pursuant to 11 U.S.C. § 523(a)(15) upon the conclusion of his Chapter 13 Plan.

The Defendant argues that the Debtor should not be discharged from his divorce obligations upon the successful conclusion of his Chapter 13 case because the discharge of this debt would be inequitable and will have a devastating effect upon her future. Additionally, the Defendant argues that "it is totally unfair for the Debtor to keep the collateral and only pay $14,000.00 and then the Defendant be responsible for the balance . . . ."[18] In support of her argument that all property settlements are excepted from discharge, the Defendant relies entirely upon an article published in

---

[16] Plaintiff's Motion for Summary Judgment, ECF No. 12, Affidavit of Boyd Rodney Floyd at 1.

[17] *Id.* at 2.

[18] Defendant's Motion for Summary Judgment, ECF No. 11 at 2.

7

1997 which was relevant prior to the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") which substantially amended the Bankruptcy Code.

Although the Defendant does not appear to dispute the characterization of the indebtedness as a property settlement, the Court will independently consider whether the indebtedness at issue is a domestic support obligation under 11 U.S.C. § 523(a)(5) or a property settlement under 11 U.S.C. § 523(a)(15) because the distinction is important in a case under Chapter 13 of the Bankruptcy Code. Post-BAPCPA, a property settlement is now generally dischargeable in a Chapter 13 case, "while a domestic support obligation is not."[19]

Pursuant to 11 U.S.C. § 727(b), domestic support obligations under § 523(a)(5) and property settlements under § 523(a)(15) are excepted from discharge in a case under Chapter 7 of the Bankruptcy Code. The term "domestic support obligation" is defined under 11 U.S.C. § 101(14A) of the Bankruptcy Code as a debt "owed to or recoverable by . . . a former spouse . . . in the nature of alimony, maintenance or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated[.]"[20]

In a case under Chapter 13 of the Bankruptcy Code, pursuant to 11 U.S.C. § 1328(a)(2), domestic support obligations are excepted from a debtor's Chapter 13 discharge while debts arising from property settlements are not excepted from discharge. Pursuant to § 1328(a)(2), "a debtor who completes his plan payments will receive 'a discharge of all debts provided for by the plan' except any debt 'of the kind specified in . . . paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9)

---

[19] *Saggus v. Saggus (In re Saggus)*, 528 B.R. 452, 456 (Bankr. M.D. Ala. 2015).

[20] 11 U.S.C. § 101(14A).

8

of section 523(a)[.]'"[21]  BAPCPA did not incorporate § 523(a)(15) into § 1328(a).  "Thus, while a Chapter 13 debtor cannot discharge debts described in § 523(a)(5), nothing in the Chapter 13 discharge provision prevents him from discharging debts that fall within the scope of its companion provision, § 523(a)(15)."[22]

The Eleventh Circuit has explained, "however, that a 'property settlement' can still be 'in the nature of support' so as to be a non-dischargeable domestic support obligation" in the context of a Chapter 13 case.[23]  "'[A] court cannot rely solely on the label used by the parties' because 'it is likely that neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy when the obligation arose.'"[24]  Instead, the Eleventh Circuit directs courts to "look beyond the label the parties have given to a particular debt and determine whether the debt is actually in the nature of alimony or support."[25]

---

[21]     *Coon v. Henderson (In re Coon)*, 522 B.R. 357, 361 (Bankr. M.D. Ala. 2014).

[22]     *McCollum v. McCollum (In re McCollum)*, 415 B.R. 625, 629 (Bankr. M.D. Ga. 2009); *See also Coon v. Henderson (In re Coon)*, 522 B.R. 357, 361 (Bankr. M.D. Ala. 2014)(explaining that under Chapter 13 of the Bankruptcy Code "debts owing to a former spouse that are not domestic support obligations . . . are dischargeable under § 1328(a)(2)"); *Rosenblum v. Hardesty (In r re Hardesty)*, 553 B.R. 86, 91 (Bankr. E.D. Va. 2016)("an obligation incurred as part of a property settlement agreement that is not in the nature of a domestic support obligation can be discharged in a chapter 13 case"); *See also* 8 COLLIER ON BANKRUPTCY § 1328.02[3][g] (Alan N. Resnick & Henry J. Sommer eds., 16th ed)(explaining that § 1328(a)(2) "does not include debts in the nature of marital property settlements, which are not within the scope of § 523(a)(5) but which are nondischargeable in chapters other than chapter 13 under section 523(a)(15)").

[23]     *Edwards v. Collins,* 2017 WL 1822570 *3 (M.D. Ala. 2017)(quoting *Benson v. Benson (In re Benson)*, 441 Fed. Appx. 650, 651 (11th Cir. 2011)).

[24]     *In re Saggus*, 528 B.R. 452, 457 (Bankr. M.D. Ala. 2015)(*quoting Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001)).

[25]     *Id.* at 651 (*citing Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001)).

9

"A debt is in the nature of support or alimony if at the time of its creation the parties intended the obligation to function as support or alimony."[26] "To make this determination a bankruptcy court should undertake 'a simply inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the *nature* of support."[27] Courts should consider the following factors to make this determination: "(1) the agreement's language; (2) the parties' financial positions when the agreement was made; (3) the amount of the division; (4) whether the obligation ends upon death or remarriage of the beneficiary; (5) the frequency and number of payments; (6) whether the agreement waives other support rights; (7) whether the obligation can be modified or enforced in state court; and finally (8) how the obligation is treated for tax purposes."[28]

The Eleventh Circuit examined these factors in the case of *Benson v. Benson (In re Benson)*, 441 Fed. Appx. 650 (11th Cir. 2011) and concluded that a Chapter 13 debtor's obligation to pay his former spouse's mortgage constituted a nondischargeable domestic support obligation in the nature of alimony or support where: (1) the debtor agreed to pay the mortgage on the marital residence which the wife retained; (2) the wife waived her right to alimony in consideration of the benefits that she received in the property settlement; (3) the agreement required the debtor to maintain sufficient life insurance to cover the mortgage obligation; (4) the debtor was entitled to claim a tax exemption for their minor children as long as he continued paying the mortgage which

---

[26] *Cummings v. Cummings (In re Cummings)*, 244 F.3d 1263, 1265 (11th Cir. 2001).

[27] *In re Cummings,* 244 F.3d 1263, 1265 (11th Cir. 2001).

[28] *Benson v. Benson (In re Benson)*, 441 Fed. Appx. 650, 651 (11th Cir. 2011).

10

made the payments appear to be child support; (5) the debtor was held in contempt in state court for failing to make the payments; and (6) the wife had not worked outside the home for at least a decade.[29] Although *In re Benson* is an unpublished decision and, therefore, lacking in detail, it appears that the Eleventh's Circuit conclusion was based in substantial part upon the financial disparity of the parties at the time of their divorce.

The facts before the Court in this case appear to be more similar to those in the case of *In re Lawson*, 538 B.R. 875 (Bankr. N.D. Ga. 2015) where the bankruptcy court held that a debtor's obligation to either refinance or sell the parties' marital home and to pay the mortgage in the meantime was not in the nature of support for the debtor's former wife or their children where: (1) the divorce decree called for the former spouse to quitclaim her interest in the property to the debtor; (2) the debtor testified that he wanted to live in the house so that the children could live in their family home when staying with him; (3) the decree did not require the debtor to provide any funds to his former spouse for her own place to live; and (4) the parties' financial positions were relatively close at the time of the divorce. Instead, the bankruptcy court concluded that the debtor's obligation to pay the mortgage appeared to be more for the debtor's own support, providing him a place to live, as opposed to support for the former spouse.

The facts of this case are also similar to the facts before the bankruptcy court in the case of *Carter v. Carter (In re Carter),* 565 B.R. 849 (Bankr. S.D. Ohio 2017), in which the bankruptcy court concluded that the debtor's obligation to pay the mortgage and to hold his former spouse harmless was not in the nature of a domestic support obligation given that the debtor continued to

---

[29]     *Id.* at 651 – 652.

live in the former marital home. The bankruptcy court noted that a "majority of the courts considering whether a mortgage debt assumed by or ordered to be paid by a debtor pursuant to a judgment of divorce have held that such an obligation is in the nature of support."[30] However, the bankruptcy court distinguished the cases, stating that "courts have reached this conclusion where the non-debtor remained in the marital residence and the debtor's obligation to pay the mortgage was a means of providing shelter that the spouse and children could not otherwise afford."[31]

"The starting point of any § 523(a)(15) analysis is the language of the divorce judgment or agreement."[32] In the case before this Court, the language of the parties' Divorce Decree provided for the Debtor to retain real property which formerly belonged to his grandmother, for the Debtor to continue making the mortgage payments on the manufactured home located on the real property in which the Debtor and the minor children were to live, and for the Debtor to have physical custody of the parties' minor children. The Divorce Decree further provided that the Defendant would not be required to pay child support because the parties had agreed to a fair "property settlement," the Defendant had moved out of the marital residence and needed time to establish financial footing, and the oldest child of the parties was almost 19 years of age. The parties further agreed that the Debtor would hold the Defendant harmless for the mortgage indebtedness which courts have held generally satisfies the requirement for § 523(a)(15).[33] The Divorce Decree did

---

[30] *In re Carter,* 565 B.R. 849, 853 (Bankr. S.D. Ohio 2017).

[31] *In re Carter,* 565 B.R. at 853.

[32] *In re Saggus*, 528 B.R. 452, 457 (Bankr. M.D. Ala. 2015).

[33] *See In re Arisa Nussa*, 565 B.R. 209 (Bankr. D.P.R. 2017)(explaining that "when a material settlement

12

not require the Debtor to maintain life insurance to cover the mortgage obligation nor provide any funds for the Defendant to obtain a place to live. Additionally, the Debtor's obligation to make the mortgage payments did not end on the Defendant's remarriage which would have been an indicia of support. There is no evidence before the Court regarding how the Debtor's obligation to pay the mortgage is treated for tax purposes, but it does appear from the Decree that each party is entitled to claim one child as a dependent for tax purposes.

Taken as a whole, the Court concludes that the language of the Divorce Decree weighs in favor of finding that the Debtor's obligation to pay the mortgage is not in the nature of alimony or support. Instead, the Court concludes that the language of the agreement weighs in favor of finding that the parties intended the obligation to be a property settlement given that the manufactured home is located on property which was formerly owned by the Debtor's grandmother, the Debtor was awarded physical custody of the parties' children, and the Debtor continued to reside in the manufactured home.

Although neither party submitted direct evidence regarding their respective financial positions at the time of their divorce in 2012, it appears from the terms of the Divorce Decree that their financial positions were relatively close when they divorced, as they are now. According to the Debtor's Affidavit, his current income is $960 per month from Social Security Disability, from which $107 is deducted for Medicare, leaving him with $853 per month, plus any additional income earned from his taxidermy endeavors. On Schedule I of the Debtor's Petition, he states that he has been disabled for seven years. Accordingly, it appears that the Debtor's income, which

---

agreement includes an express 'hold harmless' provision, the requirements of subjection (a)(15) are satisfied . . . .").

13

is below 150% of the HHS poverty guidelines for 2017, is relatively the same now as it was at the time of the parties' divorce in 2012 approximately five years ago.

Although there is no evidence before the Court regarding the Defendant's income at the time of the divorce, the Divorce Decree did not provide for either party to pay alimony nor child support. Instead, the Divorce Decree almost entirely provided for the division of the parties' personal and real property, for the allocation of debt, and for custody and visitation issues surrounding the parties' minor children. The Court notes that the Defendant has alleged in her Affidavit that the Debtor earned an additional $10,000 per year from his taxidermy business during their marriage, but there is no evidence regarding whether this figure represented gross income or net income. Additionally, it appears that the Debtor would have been ordered to pay alimony if the parties had considered the additional income to be significant at the time of their divorce.

The Court also notes that the Defendant filed an action for contempt against the Debtor in state court seeking to require the Debtor to refinance the debt in his name which is a factor in support of finding that the obligation is a support obligation because property settlements in Alabama are generally not modifiable.[34] However, that action was stayed by this bankruptcy filing and a determination regarding the requested relief was never made.

Having closely reviewed the terms of the parties' Divorce Decree and the parties' respective Affidavits, taken as a whole, the Court concludes that the parties did not intend for the Debtor's obligation under the Divorce Decree to pay the mortgage on the manufactured home and to hold the Defendant harmless to be an obligation in the nature of support or alimony. Instead,

---

[34] *See Waits v. Reaves*, 506 S.2d 1007, 1008 (Ala. Civ. App. 1987).

14

the obligation appears to be for the Debtor's own support providing a place for him to live on family property, as well as providing a home for the parties' children whom the Debtor was awarded physical custody. Although the Court understands the concerns raised by the Defendant regarding her continuing obligations under the terms of the mortgage and the hardship this will cause, unfortunately the economic reality is that the dissolution of a marriage often leaves parties with little choice but to seek bankruptcy relief.

## IV. CONCLUSION

The Court has reviewed the Divorce Decree in this Adversary Proceedings and concludes that the Debtor's obligation to make the mortgage payments on the manufactured home is not a domestic support obligation in the nature of alimony or support. The debt arising out of the Divorce Decree to pay the mortgage payments on the manufactured home is a property settlement under 11 U.S.C. § 523(a)(15) which is dischargeable in Chapter 13 pursuant to 11 U.S.C. § 1328(a)(2).

A separate Order will be entered consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

Dated this the 27th day of September, 2017.

/s/ Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
United States Bankruptcy Judge